Good morning, Your Honors. Joseph Cruviello, who pleases the Court, in pro se. Yes. Is counsel here? Yes. Okay. Co-counsel is also here. All right. Have you allotted your 15 minutes? Yes. I'm going to do five. Mr. Lay is going to do five, and we want to reserve five for rebuttal. Very good. Watch the clock. Okay. Thank you. There are two issues from my case here. One is that the district court ruled that we were collaterally stopped from asserting a constitutionally protected free speech right to video record over into a backstage area at the Asante Arena. And he ruled this based on some statements made by the previous court in a different case. And the other issue is whether or not California's Liberty of Speech Clause requires a state actor, a private person, to be a state actor. And we argue it doesn't, and we also argue even if it did, that the defendants would have met the requirement of a state actor under the Supreme Court case law. I think we've briefed it pretty well, but if you have any questions, I'd be glad to ask questions. I've got a couple for you. And first as to the, it's called the tort of vandalism, which I want to talk about. Mr. Lee, will you, Mr. Lee, be handling that one? Yeah, he'll be handling that one. The record in this case, to put it mildly, is a real mess. So it's very difficult for us to keep track of everything in this case. So I have some questions if you can help me with that. Yes. On your state action question, in the order by the district court, one of the orders by the district court, there's a reference to the case of Pruniard v. Robbins. Yes. I grew up in the San Jose area, so I know the Pruniard mall well. The district court, and correct me if I'm wrong here, seems to suggest that the Pruniard case no longer has application. Is that what your, is that your understanding of what the district court was saying, that the Pruniard case is no longer valid? No. I think what the district court was saying, I don't think any court said Pruniard is no longer valid, even the California Supreme Court. I think what the district court was saying was relying not on Pruniard but on Golden Gateway, which three judges of the seven-judge panel said State actor is a requirement and four of them rejected that requirement. Let me get to, absolutely, and I agree with that reading of the case. I guess what I'm trying to understand is that in Pruniard there was this idea that a mall could be a public forum. Yes. Where even if there were no sheriffs or police officers involved, the fact that it's a mall, a public gathering place, could in fact be, the First Amendment could apply. Has that question, the Pruniard analysis, ever been applied to the H.P. Pavilion? When I say that, I mean not whether or not there were sheriffs out there assisting the circus employees, but has the court, has any court ever analyzed whether H.P. Pavilion or any of the other open areas is like Pruniard? I don't know if they specifically said it was like Pruniard, but our previous case did rule that it was a public forum under California's Liberty Speech Clause and based it in part on Pruniard and in part on the Ninth Circuit rulings in Carreras and Cuba. And in this case, we're not even talking about being on the San Jose Arena property. We're talking about being on public streets. So it's a little different. We're actually in what's considered a public forum, traditional public forum under the First Amendment as well. And so if that's right, then when the district court in the footnote suggested that Pruniard did not have application in this case, is it your position now that that is correct or that the district court misapplied Pruniard? It wouldn't apply in the sense that we're not on private property. It would apply in the sense that Pruniard rejected the State Act requirement that the Supreme Court relied on in Lloyd to say that malls cannot be a public forum under the First Amendment. So it would, like I said, it would apply in one respect and not in the other respect. As I reviewed your argument in your briefs, it seemed to me that you suggest or said that the district court properly determined that the backstage loading area is a non-public forum. Do you agree? Yes. Well, if you make that concession, aren't you then conceding that the issue of the plaintiff's rights in areas other than parking lot B were actually litigated in the prior case? No, Your Honor, because that wasn't an issue in the prior case. But just a minute. If the court properly determined that the backstage loading area was the non-public forum, then they had to make a determination about that. And that's other than your argument that the issue of the rights in other areas except parking lot B were actually litigated. Why did they make the determination? The court made that determination after the judgment, actually. That's when he made that determination. And he made that determination in part because despite the fact that Feld was dismissed from the case early on and never formally intervened, the court kept allowing Feld to participate in the court proceedings against our — over our objections. And so Feld kept interjecting these issues in there, and the court apparently took them on. But it had nothing to do with the case. And I just want to add, too, even if it's a non-public forum, we're not seeking to physically access that public forum or that non-public forum. I understand your argument, but the argument really relates to the collateral estoppel issue, which is you suggest that the court never made any determination in that suit that is applicable here. And yet it seemed to me that if the court is determining what is a non-public forum in that issue, that just the fact that parking lot B was actually litigated does not square with that concession you made. Well, let me say this, then. Even if the court did determine it's a non-public forum and that's an accurate determination, that still doesn't collaterally estop us from asserting a constitutionally protected right to videotape into that non-public forum. It doesn't apply at all. Even if the court said it's a non-public forum, it doesn't affect our right to constitutionally videotape into that area, no more than it affects our right to constitutionally, like I said in my example, to videotape into the White House area, where it's clearly a non-public forum. So if the court did rule that... I understand your argument. I guess another thing, it seemed to me that in making this, if you will, ultimate injunction in the prior case, that the court modified to the permanent injunction or modified the statute to clarify that it didn't sanction the plaintiff's conduct. Now, it seems to me that in that situation, then, I have a tough time understanding how the court could have made that modification, as it said it did, without weighing the interests of the parties involved and coming to a conclusion which would then be collateral estoppel. The court may have weighed the interests of the party, Your Honor, but our argument is that if the court did weigh the interests of the parties, it did it without litigating the issue, it did it without any factual findings on the issue, and that cannot collateral estoppel because the issue was not litigated. Well, the problem I have is that if I go through the case as it goes on through, again, I'm having a tough time understanding that the issue isn't litigated when the court in each one of its decisions seems to be addressing the very issues that you now say were not litigated. So that's why I have put these questions to you, because those are pretty tough questions that the opposition has suggested. Right. Well, as I said, you can look at the briefing. They've submitted 28. I did look at the briefing. I'm sorry. They submitted 28 documents from that previous case, and regardless of what the court's conclusion is, that issue was never litigated. It was never an issue in the case. Nobody brought a claim on privacy, and nobody did a factual finding on whether that back lot or that backstage area was a private area or not. There was never any findings on that. It starts with their lawyer saying it in the permanent injunction trial, then a declaration after the judgment from one of their people saying it's a private area. We never got to depose anybody because it was post-judgment. There was never a finding. It was never litigated. This issue was never litigated in that case. Even though it was brought up and even though the judge may have made a conclusion about it, it was never litigated, and that's the issue here. All right. But I just want to — I understand your argument, but you've taken all your co-counsel's time, so you better let him up here. Thank you. And, Mr. Lee, while you're walking up there, I am curious about the third issue, the I'll call it the water on the camera issue. Okay. The section 1728, the vandalism question. Yes. And just to — because I know we're running out of time here. My understanding is you guys are claiming that there was, in a sense, a traditional tort or trespass that these guys either intentionally or because the elephant supposedly grabbed the hose ruined the camera or damaged the camera, correct? That's right. There is a traditional tort that's been — it's understood in California that the intentional injury to property has always been recognized as a tort. One of the issues here I think that's important for the Court to recognize is that our claim here was not just for damages, but it was also for injunctive relief. There is no case that indicates that a claim for injunctive relief doesn't lie under section 1708. Moreover, there is the case of — that came out after, obviously, this litigation, Rickley v. Godfrey, which is 212 Calap 4th, 1136, 2013, confirmed just that, which is that California has always recognized that an action in tort as opposed to contract exists for the deliberate injury to property. I'm a little concerned about your argument here. It seemed to me that the district court was pretty straightforward, that there was no cause of action alleged, and you then tried to amend your complaint. It seemed to me that you amended your complaint to allege a trespass to chattels. Well — And that was in your third amended complaint. And the district court refused the amendment, saying that no one had alleged damage to the camera in the second amended complaint, and therefore it was a lack of diligence and he wasn't going to allow the amendment. So you didn't appeal that district court decision here, so I'm wondering if you've just lost this claim. No, Your Honor, I would respectfully suggest we did not, because the decision that we are appealing was wrong in itself. Well, but you had a chance. If you were to come forth in the second amended complaint and make some kind of an allegation for trespass to chattels, or even allege some damage to the camera, you may have had something going, but you didn't say anything in the second amended complaint. So said the district court. So he said, you're not going to do this in the third amended complaint because it's a lack of diligence, and you didn't appeal that to me. So I can't focus in on what the district court did in that regard in relation to that tort, and so I'm wondering how you get here on this. Well, first of all, we disagree as to whether or not we sufficiently alleged a trespass to chattels. You can't argue that here because you didn't appeal it. The only thing you appealed to me is whether they properly dismissed the action for the vandalism, which was the first dismissal. That's correct. And that remains an issue that the court must consider, regardless of whether or not a trespass to chattel could or should have been alleged in some other form, because the court's determination that the vandalism is not a tort and that we had not pled an actionable tort was wrong. Frankly, what the court was saying is, get me something on a trespass. Get me something on something that you should do. And finally, you thought of it on the third amended complaint and are still arguing about the first dismissal on vandalism. That's because we would contend that the – when the court makes a determination that is erroneous, a party may, even when given the opportunity to amend, ask the court of appeal to make a determination on that, on the correctness of that decision. The opportunity to make an amendment, putting aside whether or not our amendment was sufficient, the opportunity to make an amendment is one that a party can elect to do or not. The question still remains as to the correctness of whether or not the substance of what we pled stated a cause of action, and it did. I wanted to make sure I had an opportunity to address some of the other questions that the Court raised regarding Pruniard and the other issues. Scalia. Sure. You've got some time. I'll try to be as quick as I can. I'm sorry. But I know that, first of all, one of the issues with respect to Pruniard, Pruniard, yes, it is still recognized in California and the courts have not rejected it. What's been misconstrued is that Pruniard was simply an instance in which the California court was expanding the scope of public fora to include areas that wouldn't ordinarily obtain under Federal law. It was not creating an exclusive area that established the only areas where State action could exist in California. The Constitution of California has always been recognized to afford broader rights than those under the Federal Constitution, and the confusion here appears to be the Court's misunderstanding that the State action, which we could have established here, was certainly more likely to obtain on a public street. The factors that established the nature of a public forum in Pruniard already obviously exist in the areas that are at issue in this case. You also asked a question regarding whether or not by noting that our comments, noting that the, that there was not. It wasn't a comment. If you're addressing my comments. Yes. It wasn't a comment. You suggested that's exactly what the district court held. Yeah, yeah. We suggested, okay. If I accept that, that we made the statement that the Court properly made a determination as to whether an area was or was not a public forum, was not, it was not our intent and I don't think it had the effect of resolving the other. You want me to read it to you? It's in the blue brief at page 15. No, no, I'm not questioning that. My point is that the issue, that would not have resolved, even if you assume that that fact is true. It does not resolve the issues that would have to be litigated to make a determination as to whether or not we could videotape within or without an area. The reason is that there are several other issues that are, that are at issue. But more importantly, there's a practical question that's sort of been missed, missed here entirely. Anyone who tries a case knows that time in the courtroom is not, you know, abundant. The notion that. Can't you, I can't really say that's the way it is in this case. Well. The time in the courtroom was quite abundant here. Well, well, actually we were, you know, the Court will see. Our ability, we were under strict guidelines, strict time limits, and the Court watched this very closely. The notion that we would then, we would, any party would extend time trying to try issues when they have an obligation to prove their case, to address completely what I would call unalleged and unplaid issues is practically unrealistic, and that's part of the unfairness of the basic ruling here. These were not issues. The question of whether or not you can videotape into an area is not strictly determined by whether or not it's a public forum. There are several other questions that have to be raised, which is whether, and more, most importantly, whether or not the party alleging that you can't videotape has a privacy interest. Thank you. That's a separate question never raised. I think I understand your argument, and you're two minutes over. Okay. So I think you're through. Okay. Thank you very much. If there's anything else I can ask, I'll try to stay on. Well, there won't be any, because you have. Do we have any of our time for. I think, Counselor, he's asking to sit down. Okay. It's time to sit down. Come forward. Good morning, Your Honors. Michael Reedy of McManus-Faulkner, on behalf of Appellee Feld Entertainment, with me today is my law partner, Ruby Kazi of McManus-Faulkner, who was lead counsel for this case at trial, and my daughter, Kylie Ann Reedy, who provided assistance with this argument. May it please the Court. Appellants believe they have the right to videotape private activities taking place in a non-public forum, here at the loading dock of H.P. Pavilion in San Jose, which is secured by guards, not open to the public, protected by a 10-foot high concrete wall where circus performers gather before and during performances to talk, relax, practice, change costumes, and eat. It's their green room, their break area. The actual loading dock is about 30 feet below the top of the concrete wall. Appellants film into this area by putting their video cameras on a long stick and holding them over the top of the 10-foot high concrete wall. There's a fundamental problem with appellants' position. They want a trial based on an alleged constitutional right that does not exist, the right to videotape into a non-public forum. In the underlying 2004 litigation, the Honorable James Ware was asked to remove language from the permanent injunction regarding the videotaping activity. He considered the request and he responded as follows. What you're asking me to do under this stipulation is to create, as a matter of law, that expressive activity can take place in private areas and be protected by the First Amendment. You would not wish anyone to be videotaping you in your home. That seems to me would run afoul of very basic protections that we all enjoy in our society. That is from the November 2009 excerpts at Exhibit 1 of our motion to take judicial notice, page 33. And as this Court noted, Mr. Cuviello admitted that the loading dock of the HP Pavilion is a non-public forum. That's the end of the inquiry. Counsel, what do we do with the footnote? I have the same question I had for Mr. Cuviello. There's that footnote in the district court's order talking about Pruneyard. Can you help me understand what the district court, at least your version of what the district court was trying to say about the applicability of Pruneyard to this case? I was looking at the order on the motion to dismiss after that question was raised, and I'm sorry, I could not locate that footnote. I will say that I believe Pruneyard is good law, and in fact, it was applied by another federal court in San Jose 10 days after we filed our answering brief. If you continue, I can direct you to where it appears. It's on page ER 13. Anyway, I don't want to, maybe your co-counsel can pull it up. I don't want to get you off track, but I'm trying to understand. And here's where I'll frame the question, is that the — in this case, the district court concluded, reading California law, that State action would be required, reading Golden Gate. Now, that's a huge issue about what Golden Gate means, and it was a very messy decision, and the court is — the California Supreme Court has not really revisited that case since. So one thing we might be asked to do in this case is to answer the question that the California Supreme Court apparently could not. Or we could say, wait a second, there's this reference to Pruneyard in this decision. Has the district court ever actually analyzed whether HP Pavilion qualifies as that special forum, like a Pruneyard? And could the case be resolved on that ground, possibly in favor of the other side, understand, and we would not have to reach this monumental question that the California Supreme Court apparently could not resolve. Can you tell me, am I right about that, or am I wrong about that? What I will tell you is I believe that Pruneyard remains good law. It has been applied. It continues to be applied. I do not believe the district court was indicating that Pruneyard should be ignored or that it is not a precedent. But did the district court ever analyze HP Pavilion under Pruneyard? I don't believe that it did, but what I can say is that there were findings made by Judge Ware that the loading dock of the HP Pavilion area is secured by security guards. It's not open to the public. It's surrounded by a ten-foot-high concrete wall. And Judge Ware also had to go through and decide which portions of HP Pavilion are public and non-public forum. Because in their pleadings, both in the 2004 and the 2011 cases, appellants raised the issue of their right to engage in expressive activities in a public forum. As a result, when Judge Ware issued the permanent injunctions, he had to define what's a public forum, what's a limited public forum, what's a non-public forum. And there were factual findings made that the loading dock area was a non-public forum. In addition, as a San Jose resident, HP Pavilion is not a completely public forum. If you want to get inside, you have to have a ticket. You have to pay. The parking lot is open. Anyone can park in the parking lot. But the inside of the pavilion is not open to the public without a ticket. The loading dock area is not available unless you're a performer or you have a pass. Now, the Pruneyard, that's open. Anyone can go in there. It's a mall. You don't need a ticket to get in. So I think that's the factual distinction. If we were, and I'm going to go on the same issue about whether one needs to be a state actor, even if I give you credit as to Golden Gateway and as to you, it seems to me that your opposition suggests that your actions outside of that, by interfering with things that take place on the public streets, make you a state actor. Don't they? Well, I don't. I mean, they go for, I mean, your idea is that Golden Gateway Center says you have to be a state actor. Correct. And therefore, you're outside of the problem as it relates to the state action. But they suggest a different idea, that just by stopping people on the public streets with your circus, that that causes you then to be subject to this problem that you have interfered with their liberty interest. But the liberty interest that's at stake here is they're videotaping into the loading dock area, the break area for these performers. And they are trying to turn around the test, the First Amendment test, as to where you can engage in your expressive activities. They are arguing that by standing on a public sidewalk, they can put a video camera over the top of a concrete wall and film into a private area. You can't do that. The court looks at into what area does your expressive activity, in this case the videotaping, occur. And this question about Golden Gateway and Pruneyard was addressed by Judge Koh in a case also brought by associates of appellants here. I'm sorry? So with Article I, Section 2A, is there any indication in that that they would have an implied right to seek damages? No, there is not. Why? One thing that is consistent with Golden Gateway and subsequent decisions in findings and holdings made by the federal courts on the Article I, Section 2 area is that there is a requirement, if you are alleging this claim, either to be a state actor or to be a private property owner who is opening your land to the public. That was the basis for the Pruneyard decision. And in Golden Gateway, where you had a plurality opinion where three justices said there is a requirement for a state actor finding, Chief Justice George, who said the state action question should not be resolved here, it's a complex question, but he held, he agreed with the lead opinion but on different grounds. And his different ground was that in Golden Gateway, it was a private property owner opening the land to the public. Now, Judge Koh made that same ruling in a similar case involving these parties. 2013 U.S. District Lexis, 145495, page 24. She held that under Article I, Section 2, there is a state actor limitation such that Article I, of citizens' exercise of speech rights in a public forum. That finding applies, but only if there is state action and only if a private property owner opens their land to the public. In that same opinion by Judge Koh, she talked about the Garawan argument, which has been raised by appellants here. They also argued before Judge Koh that Garawan was controlling. And she pointed out that both the lead opinion and the dissenting opinion in Golden Gateway said that Garawan is dicta. There was a state actor in Garawan, so Garawan is not controlling authority. Judge Koh found that Golden Gateway was persuasive, but she also cited Pruneyard, Fashion Valley Mall, and Ralph's Grocery to say that speech restrictions imposed by private individuals who open their property to the public, such that private property became a public forum, can't be sued under Article I, Section 2. A similar finding was made in another case involving appellants, Cuviello v. City of Stockton, 2008 U.S. District Court Lexis, 116537 at page 7, which held that Article I, Section 2 applies only to those private actors who open their land to the public, and in so doing resemble state actors. So I think that's the across-the-board holdings by federal courts on the state actor question. If I don't agree with you as to the collateral estoppel in the past decisions, what is the result? The result is that it still should not be allowed to proceed, because there is no constitutional right to videotape into a nonpublic forum. So at that point, I have to make that decision now, or do I send it back? Well, I think it would be futile. Because the District Court said it was collateral estoppel, and therefore did not reach the issue. Correct. If I don't agree with the collateral estoppel decision by the District Court, what is it that I am required to do? I believe that you can make a finding by law that the right that they want to pursue Why would I go forward and make that finding now, rather than send it back to the District Court to have a hearing, and maybe there's factual determinations that need to be made, maybe there's facts that need to be considered? Would I then send it back to the District Court? I suppose you could do that, and that would be the panel's decision to make. I cannot say, but I believe that You believe that there is nothing in this case, based on what's gone on in this record, which would suggest there are any facts that would help us in making that determination? That's correct. There is no case, state or federal, that allows expressive activity to be directed into a non-public forum as a constitutional right. So I would argue that sending it back to the District Court is unnecessary, because factual findings have been made, that the loading dock, secured by security guards, not open to the public, surrounded by a 10-foot-high concrete wall, they've admitted it's a non-public forum, and there is no constitutional right to videotape into that area. I also wanted to briefly address the vandalism question which was raised, because I agree that the failure to amend in the second amended complaint is dispositive. If a party voluntarily dismisses a claim by failing to replete it in an amended complaint, that claim is waived. That's from Lacey v. Maricopa County, 693 F3rd 896 928. This is a Ninth Circuit opinion. Also, Yao v. Deutsche Bank, 525 Federal Appendix 606, 607 to 608, 2013 Ninth Circuit opinion. So they had the opportunity to amend that claim. By not doing that, they have waived that claim. I'm just going to wrap up, because I just have one minute left. Appellants want this Court to reverse the District Court's decision, but to do so, they need this Court to ignore precedent and create new case law on the following issues. The constitutional right to videotape be based on where you're standing, not the area into which you're filming. That any private property, excuse me, that any private party can be sued for violating the Liberal Democratic Convention. That there be a liberty of speech clause in the California Constitution, not just state actors, not just private property owners who open their land to the public. Third, that parties be allowed to file a civil cause of action for violism in which they're asking that intentional conduct be inferred under race ipsa loquitur. Finally, that parties be allowed to appeal orders dismissing their claims with leave to amend, even if they fail to include that claim in an amended complaint. The District Court properly decided these issues, and there are no legal, factual, or policy reasons to change the existing law. Therefore, the District Court should be affirmed. Thank you for your courtesy. One final question, if I may, Presiding Judge. Sure. In, you just made the argument as to the, I'll call it the water camera issue, and you decided the Lacey case, did you make that argument in your brief to this Court? No, I'm sorry, Your Honor, I did not. In preparing for oral argument, I did find that, and all I would say is the Court does have authority to address jurisdictional issues that were not raised in the District Court or on appeal, and the quick sights to those cases are Inglewood versus Los Angeles. 451 F. 2nd, 948, 951, Ninth Circuit, 1971, and the Court can allow post-judgment briefing on that issue if it deems necessary. Thank you. Frankly, we gave you a lot longer than we gave him, and I think we have these issues well in mind. I appreciate that you had to divide your time with what I thought very able pro se, but I think we have these issues well in mind. Thank you.
judges: N.R. Smith, Owens, Collins